
Evan J. Smith
BRODSKY & SMITH
240 Mineola Boulevard, First Floor
Mineola, NY 11501
Telephone:     516.741.4977
Facsimile:     516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PINCHAS DAVIDMAN,<br><br>              Plaintiff,<br><br>  v.<br><br>RADA ELECTRONIC INDUSTRIES LIMITED, YOSSI BEN SHALOM, GUY ZUR, JOSEPH WEISS, ALON DUMANIS, ELAN SIGAL, and OFRA BROWN,<br><br>              Defendants. | Case No.:<br><br>COMPLAINT FOR:<br><br>(1) Violation of § 14(a) of the Securities Exchange Act of 1934<br>(2) Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>DEMAND FOR JURY TRIAL |

Plaintiff, Pinchas Davidman ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to his, which are alleged upon personal knowledge, as follows:

**SUMMARY OF THE ACTION**

1. Plaintiff brings this stockholder action against RADA Electronic Industries Limited ("RADA" or the "Company"), RADA's Board of Directors (the "Board" or the "Individual Defendants,") for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of

1934 (the "Exchange Act") as a result of efforts to sell the Company to Leonardo DRS, Inc. ("Parent") through merger vehicle Blackstart Ltd. ("Merger Sub," and collectively with Parent and individual board members, "DRS"), and to enjoin an upcoming stockholder vote on an all stock proposed transaction (the "Proposed Transaction").

2. The terms of the Proposed Transaction were memorialized in a June 21, 2022 filing with the United States Securities and Exchange Commission ("SEC") on Form 6-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, RADA shareholders will receive a 1.00 share of DRS common stock, in exchange for each share of RADA common stock owned. As a result, RADA will become an indirect wholly-owned subsidiary of DRS.

3. Thereafter, on August 3, 2022, DRS filed a Registration Statement on Form S4 attaching the proxy statement (the "Registration Statement") with the SEC in support of the Proposed Transaction.

4. The Proposed Transaction is unfair for a number of reasons. Significantly, it appears as though the Board has entered into the Proposed Transaction to procure for itself and senior management of the Company significant and immediate benefits with no thought to Plaintiff, as well as the Company's public stockholders. For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and executive officers will be able to exchange all Company equity awards for the merger consideration.

5. In violation of the Exchange Act, Defendants caused to be filed the materially deficient Registration Statement in an effort to Plaintiff, to vote in favor of the Proposed Transaction. The Registration Statement is materially deficient, deprives Plaintiff of the

information necessary to make an intelligent, informed and rational decision of whether to vote in favor of the Proposed Transaction, and is thus in violation of the Exchange Act. As detailed below, the Registration Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for RADA, provided by RADA management to the Board and the Board's financial advisor Evercore Group L.L.C ("Evercore") and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinions created by Evercore, if any, and provide to the Company and the Board.

6. Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff.

## PARTIES

7. Plaintiff is a citizen of Florida and, at all times relevant hereto, has been a RADA shareholder.

7. Defendant RADA incorporated under the laws of Israel and maintains its principal executive office at 7 Giborei Israel Street, Netanya 4250407, Israel. RADA's common stock is publicly traded on NasdaqCM under the symbol "RADA."

8. Defendant Yossi Ben Shalom ("Shalom") has served as director of Company at all relevant times. In addition, Shalom serves as the Board's executive Chairman.

9. Defendant Guy Zur ("Zur") has served as director of Company at all relevant times.

10. Defendant Joseph Weiss ("Weiss") has served as director of Company at all relevant times.

11. Defendant Alon Dumanis ("Dumanis") has served as director of Company at all relevant times.

12. Defendant Elan Sigal ("Sigal") has served as director of Company at all relevant times.

13. Defendant Ofra Brown ("Brown") has served as director of Company at all relevant times.

14. The Defendants named in paragraphs 8-13 are referred to herein as "Individual Defendants" or "Director Defendants."

15. Non-Party Parent is a privately held military equipment and services company headquartered in Arlington, Virginia.

## JURISDICTION AND VENUE

16. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and Section 20(a) of the Exchange Act. This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have. The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

17. Personal jurisdiction exists over each defendant either because the defendants conduct business in or maintain operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

18. Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this

4

District; for example, the Company's stock trades on the NasdaqCM Stock Exchange which is headquartered in this District.

## SUBSTANTIVE ALLEGATIONS

*Background of RADA*

19.     RADA Electronic Industries Ltd., a defense technology company, develops, manufactures, markets, and sells defense electronics to various air forces and companies worldwide. It offers digital video/audio/data recorders; high definition digital video/audio/data recording for fighter and trainer aircrafts; a range of head-up-displays color video cameras for fighter aircraft; and various ground debriefing solutions. The Company also provides avionics solutions, such as mission data recorders and debriefing solutions and HUD video cameras; and avionics for unmanned aircraft vehicles (UAVs) comprising interface control processors, engine control computers, payload management computers, and others. In addition, it offers land-based tactical radars for defense forces, critical infrastructure protection, border surveillance, active military protection, and counter-drone applications. The Company was incorporated in 1970 and is headquartered in Netanya, Israel.

20.     The Company's most recent financial performance press release before the announcement of the Proposed Transaction indicated sustained and solid financial performance. For example, in a May 10, 2022 press release announcing its 2022 First Quarter Financial Results, the Company highlighted such milestones as bookings of over $29 million, representing a 22% year-over-year growth in new business and quarterly revenues amounted to $22.5 million.

21.     Speaking on the positive results, CEO Dov Sella commented in the Press Release, "Our strong cash position allowed us to continue to produce, invest, acquire inventory and recruit people according to our plans and given the opportunity ahead of us, we did not pause for a

moment. The ending of the CR and the strong bookings already received in Q1, should provide for a strong recovery in the upcoming quarters, and we expect to maintain our normal margin profile and cash generation for 2022."

22. The financials and optimism are not an anomaly, but rather, are indicative of a trend of continued success and future potential success by RADA. Clearly, based upon these positive financial results and outlook, the Company is likely to have tremendous future success.

23. Nevertheless, the Individual Defendants have caused RADA to enter into the Proposed Transaction.

*The Flawed Sales Process*

24. As detailed in the Registration Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible.

25. Notably, the Registration Statement fails to disclose whether a committee of disinterested directors was formed in order to oversee the Proposed Transaction, and if so, what powers they had in reviewing a potential transaction, including whether they were empowered to veto a transaction that was not in the best interest of shareholders.

26. Further, despite negotiating a stock for stock transaction, the Board failed to ensure a collar mechanism was included in the merger agreement to prevent a precipitous fall in the stock price.

27. Additionally, the Registration Statement is silent as to the nature of the confidentiality agreement entered into between the Company and Parent, whether this agreement differed from any other agreement with potentially interested third parties not specifically

mentioned by the Registration Statement, if so in all specific manners, including all specific terms of any such included "don't-ask, don't-waive" provisions or standstill provisions contained therein, including, all specific conditions, if any, under which such provisions would fall away.

28. It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

*The Proposed Transaction*

29. On June 21, 2022, RADA and DRS issued a joint press release announcing the Proposed Transaction. The press release stated, in relevant part:

> **NETANYA, Israel and ARLINGTON, Virginia** – June 21, 2022 – RADA Electronic Industries Ltd. (NASDAQ: RADA, TASE: RADA) ("RADA"), a leading provider of advanced software-defined military tactical radars, and Leonardo DRS Inc. ("Leonardo DRS"), a leading mid-tier defense technology provider, today announced that they have entered into a definitive agreement to merge and become a combined public company (the "Combined Company"). The capabilities of the two companies are expected to generate strong growth from a wide range of new and high-growth markets, and are shaping the future battlefield for the U.S. military and its allies across all domains.
>
> Upon closing of the transaction, which is expected in the fourth quarter of 2022, RADA will become a wholly-owned subsidiary of Leonardo DRS. Leonardo DRS is expected to be listed on NASDAQ and TASE under the symbol "DRS."
>
> This transaction is anticipated to strengthen Leonardo DRS into a market leader in advanced sensing and force protection aligned to many of the fastest growing segments of the U.S. and international defense markets. RADA's unique advanced tactical radars are complementary to Leonardo DRS and are expected to improve its position as an air defense, counter-UAS and vehicle protection integrator in the force protection market segment. For RADA, combining with Leonardo DRS is expected to significantly bolster its global competitive positioning and increase its scale, program diversity, cash generation and addressable market, providing significant future growth and value creation opportunities. Together, the Combined Company expects to be a market leader in force protection and integrated multi-domain systems, addressing global opportunities through the worldwide presence of DRS SpA.
>
> RADA and Leonardo DRS are strong and complementary technology companies, and their close historical relationship through collaboration on multiple programs, has resulted in a deep cultural fit. The Combined Company will work across a broad portfolio of world-class defense products, including advanced sensing, force protection, network computing and electrical power & propulsion. The Combined Company will have positions on critical

force protection programs, including its partnership on the Maneuver-Short Range Air Defense (M-SHORAD) and RADA positions on SOCOM SIP (special operations command system integration partner) with Anduril Industries, the USMC GBAD (ground based air defense) and the USAF ABAD (Air Base Air Defense) Programs of Record.

Leonardo DRS's parent company and sole shareholder, DRS SpA, is a leading global Aerospace and Defense company. DRS SpA's market position will provide access to a reshaped European defense market as well as defense markets around the world, while also establishing a home market in Israel.

"The combination of RADA's tactical radar capabilities and Leonardo DRS' strength as a premier mid-tier defense provider make the Combined Company a leader in the rapidly growing force protection market, increases our addressable market, expands international opportunities and ultimately unlocks value for shareholders," said William J. Lynn III, CEO of Leonardo DRS. "The transaction also provides flexibility for the Combined Company to add capabilities in Leonardo DRS' core markets through targeted acquisitions and strategic investments as we expect to supplement strong organic growth with M&A and dividend distributions as part of our overall strategy going forward."

Dov Sella, RADA's CEO, commented: "I could not be prouder of the platform we have built throughout my nearly 20 years with RADA, culminating in this important strategic transaction with Leonardo DRS. The combination of two leading technology-focused defense companies with diversified exposure to key U.S. Department of Defense programs and an international presence creates a true win-win for RADA and Leonardo DRS shareholders. The transaction represents the first time a major U.S.-based defense company backed by a global defense prime has acquired a significant Israeli defense technology company. This unique transaction will strengthen the Israeli defense industry and set trends and direction for the future. For RADA specifically, joining forces with Leonardo DRS will significantly increase our competitiveness in the emerging and demanding markets we are addressing, which are dominated by strong and established players. We look forward to working alongside the Leonardo DRS team to continue driving innovation in the advanced sensing and force protection markets, and value creation for our shareholders."

The merger comes at a time when conflicts around the globe are highlighting the importance of the Combined Company's solutions, including vehicle protection from missile strikes and protecting troops from aerial threats. According to Mr. Lynn, "The conflict in Ukraine has underscored the vulnerability of forces to drone attacks and has highlighted the need for modern, capable force protection systems. Not only is this accelerating U.S. purchases of these systems, but it is moving European countries, which are considerably behind in this area, to acquire more critical force protection assets. The combination of RADA and Leonardo DRS will open international market opportunities, particularly in short-range air defense, counter-UAS, counter rockets, artillery and mortars (C-RAM) and vehicle protection systems."

Beyond the current conflict in Europe, counter-terrorism and threats from China, Russia and others are expected to increase demand for the high-growth core sensing, force

protection, network computing, and electrical power and propulsion technologies that the Combined Company provides. Mr. Lynn commented, "The unique defense technologies developed by the Combined Company will define the future of sensing and help to shape the future of the battlefield."

*Potential Conflicts of Interest*

30. The breakdown of the benefits of the deal indicate that RADA insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of RADA.

31. Company insiders, currently own large, illiquid portions of Company stock all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company. Notably, while the Registration Statement provides the following information, it fails to account for the cash consideration which such shares will be exchanged for:

| Name of Beneficial Owner | Number of Ordinary Shares or Options Beneficially Owned | Percentage of Ownership | |
|---|---|---|---|
| Yossi Ben Shalom | 2,020,441 | 3.95 | % |
| Alon Dumanis | 7,812 | * | % |
| Yossi Weiss | 7,812 | * | % |
| Ofra Brown | — | * | % |
| Elan Sigal | — | * | % |
| Guy Zur | 7,812 | * | % |
| Dubi Sella | 518,750 | 1.01 | % |
| Avi Israel | 186,875 | * | % |
| Oleg Kiperman | 80,061 | * | % |
| Yaniv Dorani | 143,750 | * | % |
| Max Cohen | 98,750 | * | % |
| William (Bill) Watson | 287,500 | * | % |

| | | |
|---|---:|---:|
| Scott Wood | 24,999 | *% |
| All directors and executive officers as a group (13 persons) | 3,384,562 | 6.62 |

32. Additionally, Company insiders, currently own large amounts of company options, restricted stock units, and other equity awards, all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company. The Registration Statement fails to give a complete accounting of these awards.

33. The Registration Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

34. Thus, while the Proposed Transaction is not in the best interests of RADA, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

*The Materially Misleading and/or Incomplete Registration Statement*

35. On August 4, 2022, the RADA Board caused to be filed with the SEC a materially misleading and incomplete Registration Statement that, in violation the Exchange Act, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

36. Specifically, the Registration Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction. In particular, the Registration Statement fails to disclose:

   a. Adequate disclosure as to whether a committee of disinterested directors was appointed to oversee the sales process, and if so, the powers the committee had in doing so;

   b. Adequate disclosure as to why no collar mechanism was included in the merger agreement;

   c. Whether the confidentiality agreements entered into by the Company with Parent differed from any other unnamed confidentiality agreement entered into between the Company and an interested third parties;

   d. All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including The Consortium, would fall away; and

   e. Adequate and complete disclosure of communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.

*Omissions and/or Material Misrepresentations Concerning RADA's Financial Projections*

37. The Registration Statement fails to provide material information concerning financial projections for RADA provided by RADA management to the Board and Evercore and

11

relied upon by Evercore in its analyses. The Registration Statement discloses management-prepared financial projections for the Company which are materially misleading.

38. Notably the Registration Statement reveals that as part of its analyses, Evercore reviewed, "reviewed certain internal projected financial data relating to RADA and furnished to Evercore by the management of RADA."

39. Therefore, the Registration Statement should have, but fails to provide, certain information in the projections that RADA management provided to the Board, Evercore, and Evercore. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig*., 924 A.2d 171, 201-203 (Del. Ch. 2007)

40. With regard to the *Summary of the Financial Projections by RADA* prepared by RADA, the Registration Statement fails to disclose material line items for the following:

    a. A complete definition for adjusted EBITDA, as well as the underlying inputs, metrics, and assumptions used to determine this metric;

    b. The underlying inputs, metrics, and assumptions used to determine a tax rate of 10%; and

    c. The underlying inputs, metrics, and assumptions used to extrapolate the financial metrics used to determine projection data for FY2026.

41. With regard to *Summary of the Financial Projections by DRS* prepared by DRS, the Registration Statement fails to disclose the following:

      a. A complete definition for adjusted EBITDA, as well as the underlying inputs, metrics, and assumptions used to determine this metric;

      b. A complete definition for Unlevered Free Cash flow as well as the underlying inputs, metrics, and assumptions used to determine this metric;

      c. The underlying inputs, metrics, and assumptions used to extrapolate the financial metrics used to determine projection data for FY2026.

42. The Registration Statement fails to provide a complete disclosure of projections created for the Pro Forma Company.

43. The Registration Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

44. This information is necessary to provide Plaintiff, in his capacity as a Company stockholder, a complete and accurate picture of the sales process and its fairness. Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

45. Without accurate projection data presented in the Registration Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of the Evercore' financial analyses, or make an informed decision whether to vote in favor of the Proposed Transaction. As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement.

*<u>Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Evercore</u>*

46. In the Registration Statement, Evercore describes its fairness opinion and the various valuation analyses performed to render such opinion. However, the descriptions fail to

include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions. Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

47. With respect to the *Discounted Cash Flow Analysis - RADA*, the Registration Statement fails to disclose the following:

   a. The specific inputs and assumption used to determine perpetuity growth rates of 3.50-4.50%;

   b. The specific inputs and assumption used to determine discount rates ranging from 11.75% to 13.25%;

   c. The Company's weighted average cost of capital;

   d. The range of implied enterprise values calculated;

   e. The value of RADA's cash and investments in affiliates, as of March 31, 2022; and

   f. The net present value of tax attributes as applied in this analysis;

48. With respect to the *Selected Public Companies Trading Analyses - RADA*, the Registration Statement fails to disclose the following:

   a. The multiples, inputs, metrics and assumptions used to determine a reference range of Adjusted EBITDA multiples of 14.0x – 17.0x for 2022;

   b. The multiples, inputs, metrics and assumptions used to determine a reference range of Adjusted EBITDA multiples of 11.0x – 14.0x for 2023.

49. With respect to the *Selected Precedent Transactions Analysis - RADA*, the Registration Statement fails to disclose the following:

   a. The specific date on which each transaction closed;

   b. The value of each transaction compared; and

   c. The specific inputs, metrics, and assumptions used to determine a reference range of Adjusted EBITDA multiples of 14.0x to 17.5x.

50. With respect to the *Discounted Cash Flow Analysis - DRS*, the Registration Statement fails to disclose the following:

   a. The specific inputs and assumption used to determine perpetuity growth rates of 3.0%-4.0%;

   b. The specific inputs and assumption used to determine discount rates ranging from 9.25% to 10.75 %;

   c. The weighted average cost of capital for DRS;

   d. The range of implied enterprise values calculated for DRS; and

   e. DRS's estimated net debt and after-tax underfunded pension obligation as of March 31, 2021.

51. With respect to the *Selected Public Company Trading Analysis - DRS*, the Registration Statement fails to disclose the following:

   a. The multiples, inputs, metrics and assumptions used to determine a reference range of TEV / 2022E Adj. EBITDA multiples of 10.0x –13.0x;

   b. The multiples, inputs, metrics and assumptions used to determine a reference range of TEV / 2023E Adj. EBITDA multiples of 9.0x - 12.0x;

   c. The multiples, inputs, metrics and assumptions used to determine a reference range of TEV / 2022E Adj. EBITDA-CapEx multiples of 12.0x – 15.0x; and

   d. The multiples, inputs, metrics and assumptions used to determine a reference range of TEV / 2023E Adj. EBITDA-CapEx multiples of 10.5x – 13.5x.

52. With respect to the *Analysts' Price Targets*, the Registration Statement fails to disclose the following:

   a. The specific price targets and research analyst estimates consulted; and

   b. The Wall Street research firms who authored each estimate or report.

53. With respect to the *Premiums Paid Analysis*, the Registration Statement fails to disclose the following:

   a. The specific transactions compared;

   b. The date on which each transaction compared closed; and

   c. The inputs, metrics, and assumptions used to determine a premium range of 10.0% to 30.0%.

54. These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

55. Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder. Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public RADA stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement.

## FIRST COUNT

### Violations of Section 14(a) of the Exchange Act

### (Against All Defendants)

56. Plaintiff repeats all previous allegations as if set forth in full herein

57.     Defendants have disseminated the Registration Statement in favor of the Proposed Transaction.

58.     Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title.

59.     As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

60.     The Registration Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that

17

the Registration Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

61. The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

62. The Individual Defendants were at least negligent in filing an Registration Statement that was materially misleading and/or omitted material facts necessary to make the Registration Statement not misleading.

63. The misrepresentations and omissions in the Registration Statement are material to Plaintiff and the Class, and at present fail to provide complete information if such misrepresentations and omissions are not corrected.

## SECOND COUNT

### Violations of Section 20(a) of the Exchange Act

### (Against All Defendants)

64. Plaintiff repeats all previous allegations as if set forth in full herein.

65. The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or should have known that the Registration Statement was materially misleading to Company stockholders.

66. The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein. The Individual

Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Registration Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws. The Individual Defendants were able to, and did, control the contents of the Registration Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Registration Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

67. The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of RADA's business, the information contained in its filings with the SEC, and its public statements. Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from the Company's stockholders and that the Registration Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Registration Statement and are therefore responsible and liable for the misrepresentations contained herein.

68. The Individual Defendants acted as controlling persons of RADA within the meaning of Section 20(a) of the Exchange Act. By reason of their position with the Company, the Individual Defendants had the power and authority to cause RADA to engage in the wrongful conduct complained of herein. The Individual Defendants controlled RADA and all of its employees. As alleged above, RADA is a primary violator of Section 14 of the Exchange Act and SEC Rule Registration Statement. By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act

WHEREFORE, Plaintiff demands injunctive relief, in his favor, and against the Defendants, as follows:

A.   Enjoining the Proposed Transaction;

B.   In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.   Directing the Individual Defendants to comply with the Exchange Act and to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.   Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.   Granting such other and further relief as this Court may deem just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: August 12, 2022               **BRODSKY & SMITH**

By:_/s/*EvanJ. Smith*_____
Evan J. Smith
240 Mineola Boulevard
Mineola, NY  11501
Phone:  (516) 741-4977
Facsimile (561) 741-0626

*Counsel for Plaintiff*